UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

TIMOTHY WAYNE GUESS,

        Petitioner,

v.                                    Civil No. 2:14cv93
                                      Criminal No. 2:10cr140
UNITED STATES OF AMERICA,

        Respondent.

## OPINION and ORDER

This matter is before the Court on Timothy Wayne Guess's ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.[1] Petitioner's § 2255 Motion and associated memorandum advance <u>more than 250 claims</u>, nearly all of which assert ineffective assistance of counsel ("IAOC"). Many of these claims are duplicative and nondescript, with Petitioner's § 2255 motion advancing twenty-five primary grounds for relief, and each primary ground including numerous separately numbered subclaims.[2] The Government filed a responsive brief which, in somewhat of a herculean effort,

---

[1] Also pending before this Court is Petitioner's "Motion for Specific Discovery," requesting additional materials in support of Petitioner's § 2255 motion. ECF No. 161. In light of the Government's subsequent production of the requested discovery materials, ECF No. 165, Petitioner's motion for additional discovery is dismissed as moot, and is alternatively denied as no further relief is warranted.

[2] Petitioner also provided thirty-five pages of exhibits in support of his § 2255 motion, which primarily consist of affidavits executed by Petitioner. ECF No. 147-5. Additionally, Petitioner submitted a separate eighteen page memorandum in support of Ground Twenty-One, along with twenty-seven additional pages of exhibits. ECF No. 148.

categorizes and endeavors to respond to each of Petitioner's hundreds of subclaims. ECF No. 155. After obtaining an extension of time, Petitioner filed a reply brief and reply affidavit. ECF Nos. 159, 160. Petitioner thereafter filed a motion for specific discovery, and after such discovery was provided by the Government, this Court entered an Order permitting Petitioner additional time to file what amounted to a second § 2255 reply brief. ECF No. 167. Petitioner's second/ supplemental reply brief, submitted in two separate filings, totaled more than 125 pages of argument. ECF Nos. 168, 169.

Notwithstanding the excessive number of claims advanced by Petitioner, the Court has reviewed and considered all of Petitioner's claims and finds that none are sufficient to satisfy the legal standard applicable to collateral challenges to a final conviction and/or sentence.[3] Moreover, after reviewing the written record, the Court finds that an evidentiary hearing is unnecessary because the record conclusively demonstrates that Petitioner is not entitled to any relief. See R. Gov. § 2255 Proc. in U.S. Dist. Cts. 8(a). As

---

[3] Although never presented to the Court, and although pro se habeas petitioners are typically afforded a degree of lenity, had the Government objected to the scope of Petitioner's motion, the Court likely would have granted a request requiring Petitioner to narrow his claims. The vast number of claims asserted by Petitioner not only waste resources for all involved in the case, but generally act as a disservice to the filer as the strongest claims for relief are masked among baseless and repetitive "noise." Cf. United States v. Mason, 774 F.3d 824, 830 (4th Cir. 2014) (noting that "it can be positively detrimental . . . not to set priorities but rather to scattershot the case" by raising every possible claim).

discussed below, Petitioner's § 2255 motion is **DENIED in its entirety,** to include all of the primary claims and subclaims expressly addressed below and those claims considered but not individually discussed herein.

## I. FACTUAL AND PROCEDURAL HISTORY

On June 23, 2010, Julie Oliva ("Oliva") was arrested for possessing methamphetamine (hereinafter "meth"). As a result of her arrest, Oliva agreed to participate in a sting whereby, under police supervision, she arranged the purchase of approximately three grams of meth from a drug source who had been introduced to Oliva by her roommate, Kristin Post ("Post").[4] While at the Police Operations Center, Oliva made a call to Petitioner (the source) and arranged for Petitioner to meet Oliva at her apartment to complete a meth transaction. However, before Oliva and officers arrived back at her residence, Petitioner called Oliva stating that he was already there, standing out front. When Oliva arrived and drove by the location in the vehicle with the officers she identified Petitioner to the police as well as his white pickup truck parked in front of her apartment building. The police then approached and apprehended Petitioner, and during a search of his person, they found approximately three grams of meth,

---

[4] The trial record indicates that Post was Oliva's friend and had lived with her for a period of time. For simplicity, Post will be referred to herein as Oliva's "roommate," a title used during Petitioner's jury trial.

approximately $1,100 in cash, and a loaded firearm. Petitioner was questioned, without having been read his Miranda rights, and he indicated that the white truck out front belonged to him. Petitioner also had the truck keys hanging around his neck. When asked, Petitioner declined to consent to a search of his truck. The police, however, had a drug dog perform a sweep of the truck, and after the dog alerted, the truck was searched. The following items were found in the truck: a large quantity of Oxycodone pills, Diazepam and Amphetamine pills, approximately 18 grams of methamphetamine, a second firearm, approximately $1,400 in cash, and a digital scale.

Petitioner was indicted by a federal grand jury, and the Government subsequently pursued and obtained a superseding indictment charging Petitioner with ten felony offenses, including six drug trafficking offenses and four firearm offenses. Two of the four firearm offenses carried consecutive mandatory minimum sentences under 18 U.S.C. § 924(c). After a multi-day jury trial, Petitioner was convicted of all counts, to include all three conspiracies charged in Count One.[5]

Defense counsel thereafter moved for judgment of acquittal, sought to dismiss one of the § 922(g) felon in possession of a firearm counts as multiplicitous, and sought to avoid the

---

[5] Although Petitioner was not separately charged for such conduct, trial testimony provided by jail inmates that were housed with Petitioner after his arrest indicated that Petitioner inquired about arranging to pay someone to have Oliva killed.

imposition of consecutive sentences on the § 924(c) firearm in furtherance counts. While defense counsel was successful in securing a ruling that the two § 922(g) felon in possession counts were multiplicitous, counsel was unable to succeed on his other challenges, including his challenge to the § 924(c) counts. This Court thereafter imposed a sentence of 460 months imprisonment, consisting of 100 months, concurrent, on all of the drug counts and the remaining § 922(g) count, 60 months consecutive on the first § 924(c) conviction, and 300 months consecutive on the second § 924(c) conviction. The consecutive sentences on the § 924(c) counts were mandated by statute.

Petitioner appealed his conviction and sentence, and the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") affirmed. Specifically, the Fourth Circuit rejected Petitioner's challenges to the conspiracy conviction and his challenge asserting that the two § 924(c) firearm counts were "multiplicitous."

Petitioner subsequently filed his § 2255 motion advancing twenty-five claims, which include more than 200 additional subclaims, and his motion and accompanying memorandum span approximately 150 pages, the majority of which are single spaced. While such briefing appears to be in gross violation of the Local Rules of this Court limiting civil memoranda to thirty double spaced pages, E.D. Va. Loc. Civ. R. 7(F), the Government

did not challenge Petitioner's filing on this basis and instead endeavored to categorize and group Petitioner's claims and subclaims and offer a response to each.   After obtaining an extension of time to file his initial reply and supplemental reply, Petitioner's reply briefs, affidavits, and exhibits have been received and reviewed by the Court.   This matter is therefore ripe for review.

## II. STANDARD OF REVIEW

A federal prisoner, in custody, may collaterally attack his sentence or conviction by moving the district court "to vacate, set aside or correct the sentence."   28 U.S.C. § 2255(a).   To obtain such relief, a petitioner must prove by a preponderance of the evidence that his sentence or conviction was "imposed in violation of the Constitution or laws of the United States," that the district court "was without jurisdiction to impose such sentence," that the sentence exceeds "the maximum authorized by law," or that the sentence or conviction is "otherwise subject to collateral attack."   Id.; Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).   Because a § 2255 motion "is ordinarily presented to the judge who presided at the original conviction and sentencing . . . the judge's recollection of the events at issue" may inform the resolution of the motion. Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

A § 2255 motion is, in essence, a statutory federal habeas corpus action that enables a petitioner to collaterally attack his sentence or conviction through the filing of a new proceeding, as contrasted with a direct appeal.[6]  United States v. Hadden, 475 F.3d 652, 663 (4th Cir. 2007).  With limited exceptions, a petitioner advancing new claims asserted for the first time in a § 2255 motion "must clear a significantly higher hurdle than would exist on direct appeal."  United States v. Frady, 456 U.S. 152, 166 (1982).  The "higher hurdle" applies because, once a Petitioner's opportunity to pursue a direct appeal has been waived or exhausted, there is "a final judgment [that] commands respect."  Id. at 164-65.  Accordingly, the doctrine of procedural default generally prevents a district court from reaching the merits of § 2255 claims that were not raised on direct appeal unless a petitioner can show: (1) "cause" excusing the failure to directly appeal such alleged errors; and (2) "actual prejudice resulting from the errors of which he complains."  United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999).

"'The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel.'"  United

---

[6]  The existence of the right to pursue a collateral attack does not displace a direct appeal as the "usual and customary method of correcting trial errors."  United States v. Allgood, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999).

States v. Pettiford, 612 F.3d 270, 280 (4th Cir. 2010) (quoting
Mikalajunas, 186 F.3d at 493).   As for prejudice, it is not
enough for a petitioner to demonstrate "a possibility of
prejudice," but rather, he must show that errors "worked to his
actual and substantial disadvantage, infecting his entire trial
with error of constitutional dimensions." Frady, 456 U.S. at
170.   A § 2255 petitioner need not, however, overcome the
procedural default bar to advance a freestanding claim of
ineffective assistance of counsel, which is properly asserted
for the first time in a § 2255 motion.   See United States v.
King, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled
that 'a claim of ineffective assistance should be raised in a 28
U.S.C. § 2255 motion in the district court rather than on direct
appeal, unless the record conclusively shows ineffective
assistance.'" (quoting United States v. Williams, 977 F.2d 866,
871 (4th Cir. 1992))).[7]

    The Sixth Amendment to the Constitution of the United
States provides that "the accused shall enjoy the right . . . to
have the Assistance of Counsel for his defence." U.S. Const.
amend. VI.   The United States Supreme Court has interpreted the
right to counsel as providing a defendant "'the right to the

---

[7] Such rule exists because the Federal Rules Governing § 2255 Proceedings
permit expansion of the record, which is generally unavailable on direct
appeal and may be necessary to properly resolve an ineffective assistance
claim.   United States v. Baptiste, 596 F.3d 214, 216 n.1 (4th Cir. 2010)
(citing Massaro v. United States, 538 U.S. 500, 504-06 (2003)).

effective assistance of counsel.'" Strickland v. Washington, 466 U.S. 668, 686 (1984) (emphasis added) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). To obtain relief based on an allegation of ineffective assistance, a petitioner must establish both that: (1) counsel's performance was so deficient that it fell below an objective standard of reasonableness; and (2) counsel's inadequate performance caused the petitioner prejudice. Id. at 687–88. "[U]nsubstantiated and largely conclusory statements" are insufficient to carry a petitioner's burden as to the two prongs of the Strickland test. United States v. Turcotte, 405 F.3d 515, 537 (7th Cir. 2005); see United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court.") (quotation marks and citation omitted).

Satisfying the first prong of Strickland requires a showing that counsel "made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Reviewing courts strongly presume that counsel exercised reasonable professional judgment, and only in "relatively rare situations" will a § 2255 motion establish that, "'in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.'" Tice v.

Johnson, 647 F.3d 87, 102 (4th Cir. 2011) (quoting Strickland, 466 U.S. at 690). As it is all too easy to challenge an act, omission, or strategy, once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. As recently reiterated by the Fourth Circuit, the "basic lesson" of Strickland is not just deference but high deference, and attorneys are permitted to "be selective and strategic without risking an ineffective assistance of counsel claim," as demonstrated by the well-established and consistent Fourth Circuit precedent holding that the law does "not penalize attorneys for failing to bring novel or long-shot contentions." United States v. Mason, 774 F.3d 824, 828, 830 (4th Cir. 2014) (citations omitted).

The second prong of Strickland requires a petitioner to "affirmatively prove prejudice," which requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If a petitioner fails to prove either of the two prongs of the Strickland test, the court need

not evaluate the other prong. <u>United States v. Roane</u>, 378 F.3d 382, 404 (4th Cir. 2004).

### III. DISCUSSION

#### A. Grounds One & Fourteen – IAOC – Failure to Challenge Lack of Probable Cause to Search Person & Vehicle

Petitioner's first and fourteenth claims, alleging ineffective assistance based on defense counsel's failure to effectively challenge the search of Petitioner's person and his truck, are denied for failure to satisfy either the performance or the prejudice prongs of the <u>Strickland</u> test outlined above. <u>Strickland</u>, 466 U.S. at 687, 693-94. First, Petitioner fails to demonstrate that defense counsel acted outside the wide range of reasonably professional assistance by: (1) failing to argue lack of probable cause for the searches; or (2) through his reasoned and selective strategic decisions associated with the handling of the suppression motion filed in this case. <u>See</u> <u>Williams v. Kelly</u>, 816 F.2d 939, 950 (4th Cir. 1987) ("Counsel is not ineffective merely because he overlooks one strategy while vigilantly pursuing another"); <u>Strickland</u>, 466 U.S. at 689 ("Even the best criminal defense attorneys would not defend a particular client in the same way.").

Prior to trial, defense counsel filed a motion seeking to suppress: (1) multiple statements Petitioner made to police prior to receiving <u>Miranda</u> warnings; and (2) the physical evidence seized from Petitioner's truck on the basis that such

evidence was discovered only after Petitioner admitted, in an un-Mirandized custodial statement, that the truck belonged to him. At the suppression hearing, the Government and defense counsel agreed that the Government would not introduce at trial any of the post-arrest un-Mirandized statements Petitioner made at the police station, and defense counsel conceded that controlling law would not support suppression of the physical evidence found in Petitioner's truck even if the defense was able to prove that a Miranda violation occurred at the scene of Petitioner's arrest. Cf. United States v. Nichols, 438 F.3d 437, 442 (4th Cir. 2006) (explaining that the exclusionary rule does not apply to physical evidence or witnesses discovered as a result of "unwarned but otherwise voluntary statements" made by a suspect while in custody (citing United States v. Patane, 542 U.S. 630, 636 (2004))). This Court thereafter issued a thirty-eight page written opinion addressing the remaining disputed suppression issues, ECF No. 50, primarily ruling in Petitioner's favor, with the acknowledgement that certain evidence may become admissible at trial if the defense "opened the door" to it during Petitioner's trial. In light of the facts of this case (discussed in greater detail immediately below), to include the fact that a cooperating source arranged a drug transaction with Petitioner in the presence of police, the controlling law on the "fruit of the poisonous tree doctrine" as applicable in the

_Miranda_ context, _Nichols_, 438 F.3d at 442, and the controlling law on the "automobile exception," _United States v. Kelly_, 592 F.3d 586, 590-91 (4th Cir. 2010), Petitioner fails to demonstrate that counsel performed in a constitutionally deficient manner in failing to raise a lack of probable cause claim or in the handling of the other suppression issues.

Second, even assuming that defense counsel committed a constitutional error by not advancing (or maintaining) additional challenges to the search and seizure of Petitioner's person or his truck, Petitioner fails to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." _Strickland_, 466 U.S. at 693-94. For the record, the Court notes that Petitioner's allegations and argument in support of Grounds One and Fourteen, similar to some of the other allegations found in his § 2255 motion and briefing, appear to mischaracterize the record. Live testimony from the same police officer at both the suppression hearing and the trial established that on June 23, 2010, Oliva used her cell phone, in the presence of police, to arrange a drug transaction at her home. The officer further testified that when the police and Oliva arrived at her apartment: (1) Petitioner was standing in front of her apartment; (2) Oliva identified Petitioner to police; and (3) Oliva identified the white truck parked in front

of her apartment building as belonging to Petitioner. Sworn testimony at the suppression hearing further demonstrated that, before Petitioner's truck was searched, the police verified that Petitioner's name appeared on the truck's registration and a drug dog alerted to the truck. Moreover, a key that opened the truck was found in Petitioner's possession, and the events unfolding on June 23, 2010, including Petitioner responding to Oliva's phone call by arriving at Oliva's residence prior to the arrival of Oliva and the police, plainly supported the officers' belief that Petitioner had driven his white truck immediately prior to the officers' arrival at Oliva's apartment. In light of all the evidence possessed by police prior to the searches, to include both direct and circumstantial evidence obtained through Oliva and through police observations, Petitioner fails to demonstrate a reasonable probability of success of any further legal arguments challenging the search of his person or his truck.[8]  Cf. Kelly, 592 F.3d at 590-91 (explaining that the "automobile exception" to the warrant requirement does not have an "exigency" requirement separate "from the inherent mobility

---

[8] It is also notable that, prior to searching Petitioner's truck, Oliva's credibility had already been bolstered by the fact that Petitioner appeared at Oliva's residence, as arranged, and he was found with approximately three grams of meth in his pocket.  While Petitioner's various filings in this matter repeatedly indicate that he was "set up" by Oliva and that he is actually innocent and was not violating any state or federal law at the time of his arrest, such assertions are belied by the fact that Petitioner was not only found with meth in his pocket, but after previously having been convicted of a drug felony and a firearm felony, he was found carrying a concealed firearm.

14

of the automobile," and finding that such exception applied "to the search of an unoccupied vehicle parked in a driveway even though the police could have blocked the vehicle from escaping") (citations omitted).

Third, to the extent the instant claims include subclaims asserting that counsel performed deficiently in ways unrelated to the search and seizure of Petitioner or his vehicle, Petitioner similarly fails to demonstrate that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Notably, as this Court has previously recognized, "[s]uch a showing must go beyond establishing that counsel's performance was below average, since 'effective representation is not synonymous with errorless representation.'" Rowsey v. United States, 71 F. Supp. 3d 585, 597 (E.D. Va. 2014) (quoting Springer v. Collins, 586 F.2d 329, 332 (4th Cir. 1978)); see Griffin v. Warden, Maryland Corr. Adjustment Ctr., 970 F.2d 1355, 1357 (4th Cir. 1992) ("'Deficient performance' is not merely below-average performance; rather, the attorney's actions must fall below the wide range of professionally competent performance.").[9]

---

[9] In Petitioner's first reply brief and affidavit in response to his trial counsel's affidavit, Petitioner asserts that defense counsel did not fully inform Petitioner about several strategic decisions, including counsel's position on the suppression motion, potential trial stipulations, and jury instructions. First, as discussed herein, Petitioner fails to demonstrate that counsel mishandled any of these strategic decisions, and

Petitioner likewise fails to demonstrate that he suffered prejudice from any of the errors alleged in Petitioner's varied and somewhat unfocused subclaims. For all of these reasons, Petitioner's First and Fourteenth Grounds for relief fail to demonstrate IAOC.

### B. Ground Two - IAOC - Conspiring with Prosecution

Petitioner's second claim is denied for failure to satisfy either the performance or the prejudice prongs of the <u>Strickland</u> test as Petitioner fails to demonstrate that defense counsel conspired with the prosecution. Petitioner's argument on this ground again challenges defense counsel's handling of the suppression motion, which <u>appropriately involved</u> a voluntary resolution of two claims (one in Petitioner's favor and one in the Government's favor), and in light of the applicable facts and law regarding the claim conceded by defense counsel, Petitioner plainly fails to establish a conspiracy and/or that his counsel provided constitutionally deficient performance.[10]

---

he therefore fails to satisfy <u>Strickland</u>. Second, assuming that, as claimed by Petitioner, counsel failed to fully inform Petitioner of these matters and/or failed to obtain Petitioner's approval, such failures do not support a meritorious § 2255 claim. See <u>United States v. Chapman</u>, 593 F.3d 365, 367-68 (4th Cir. 2010) ("It is by now well-established that in a criminal trial, defense counsel has the authority to manage most aspects of the defense without first obtaining the consent of the defendant," including matters involving "trial strategy and tactics, such as what evidence should be introduced, <u>what stipulations should be made</u>, what objections should be raised, and <u>what pre-trial motions should be filed</u>.") (emphasis added) (internal quotation marks and citation omitted).

[10] Notwithstanding the fact that Petitioner's original § 2255 motion advanced hundreds of claims across 125 single spaced pages and was supported by multiple affidavits signed by Petitioner, and notwithstanding

Petitioner also fails to demonstrate resulting prejudice, and the relief sought in Ground Two is therefore denied.[11]

### C. Ground Three – IAOC – Failure to Request "Informant" jury instruction

Petitioner's next claim, that counsel was ineffective for failing to secure an "informant" jury instruction, is denied for

---

the fact that, months later, Petitioner filed a reply memorandum (titled "motion") and sworn affidavit, Petitioner's later-filed supplemental reply brief (itself over 125 pages) appears to recast the facts underlying some of Petitioner's claims in an apparent effort to strengthen his position. For example, Petitioner argues in his supplemental reply that his admission to police that he owned the white truck was made under duress because he had been "arrested at gunpoint" and "thrown to the ground," causing his un-Mirandized statements to be "obtained through coercion." ECF No. 169, at 21. First, such newly asserted facts are arguably unsworn as the only attestation referencing perjury appears on the certificate of service. Cf. United States v. Rhodes, No. 3:08cr82, 2013 WL 150335, at *3 (E.D. Va. Jan. 14, 2013) (indicating that "unsworn allegations cannot constitute a basis for habeas relief," and therefore, facts set forth "in an unsworn memorandum will not suffice") (internal citations and quotation marks omitted); Garcia v. United States, No. 1:11cr253-3, 2015 WL 7283136, at *1 n.4 (M.D.N.C. Nov. 16, 2015) (same). Second, even if considered sworn statements, particularly in light of the hundreds of claims previously advanced, and the fact that a reply brief had already been filed in this matter, the Court deems it improper to permit Petitioner to "amend the § 2255 motion with new arguments and claims presented for the first time in a [second/supplemental reply] brief." United States v. Ibarra-Ayon, No. 5:13cr9-1, 2015 WL 5278379, at *1 n.1 (W.D. Va. Sept. 9, 2015); see Hull v. United States, No. RWT 05-0109, 2008 WL 4181946, at *3-4 (D. Md. Sept. 5, 2008) (declining to consider IAOC arguments that were presented for the first time in a § 2255 reply memorandum). Third, even assuming that Petitioner's newly asserted facts are timely advanced sworn factual clarifications, and further assuming that Petitioner's statement regarding truck-ownership was in fact coerced, because the officers already knew that the truck belonged to Petitioner through Oliva's statements, a vehicle registration verification, and the key found around Petitioner's neck, Petitioner fails to demonstrate any reasonable likelihood that a further challenge by counsel to the vehicle search might have resulted in suppression of the contents of the truck. Cf. Nix v. Williams, 467 U.S. 431, 443-44 (1984) (discussing the "independent source doctrine" and the "inevitable discovery doctrine").

---

[11] Petitioner's varied subclaims included within Ground Two, both those associated with the suppression hearing and those that are somewhat scattershot (such as "failure to provide the Movant with a substantial meritorious defense," "failure to file a motion to dismiss the indictment," and "failure to preserve errors") likewise fail to satisfy the Strickland standard.

failure to satisfy the "highly demanding" Strickland standard.
Kimmelman v. Morrison, 477 U.S. 365, 381-82 (1986). Such claim
again relies on an apparent mischaracterization of the
evidentiary record regarding what Oliva reported to police prior
to Petitioner's arrest.[12] Moreover, Petitioner acknowledges that
the Court gave an "accomplice instruction" that contained some
of the same cautionary statements as the "informant" instruction
that Petitioner now contends his lawyer should have requested.

This Court's review of the jury instructions used in this
case reveals both that the Court gave a general instruction
cautioning the jury to consider each witness's potential motive
to falsify testimony, and gave the much more specific accomplice
instruction warning that the jury should consider whether the
accomplice's testimony (here, Oliva) was affected by self-
interest or by an agreement with the Government. Trial Tr. 403,
405-06, ECF No. 101. Petitioner's § 2255 filings therefore fail
to demonstrate what additional statement of the law was
necessary through an "informant instruction," fail to
demonstrate that such point of law is not adequately covered by
the instructions given, and further fail to demonstrate why such
point of law is critical to his defense. Cf. United States v.

---

[12] Petitioner's § 2255 motion asserts that Oliva told police that she
never purchased drugs from Petitioner in the past but that she was willing
to call him and try to set him up. Oliva's sworn testimony, however, was
that she had purchased meth from Petitioner in the past on one occasion,
but that such purchase occurred through, and was facilitated by, Oliva's
roommate, Kristin Post.

Lewis, 53 F.3d 29, 32 (4th Cir. 1995) (noting that failure to provide an additional jury instruction is reversible error only if the proposed instruction: "(1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense") (quotation marks and citation omitted). Accordingly, Petitioner fails to demonstrate constitutionally deficient performance or resulting prejudice.[13]

### D. Ground Four - IAOC - Failure to Challenge Selective and Vindictive Prosecution

Petitioner's fourth claim asserts that defense counsel should have challenged the Government's vindictive decision to pursue a superseding indictment to add the conspiracy count. For the reasons stated in the Government's responsive brief, such claim both fails to establish that the Government acted improperly and fails to demonstrate that defense counsel's performance was deficient, let alone constitutionally deficient. See United States v. Williams, 47 F.3d 658, 660 (4th Cir. 1995) ("In the pretrial setting . . . the Supreme Court has allowed prosecutors to threaten criminal defendants with harsher

---

[13] Rather than continue to reference Petitioner's related and unrelated "subclaims" in each and every section of this opinion, the Court's ruling on each ground should be construed to include all subclaims. When deemed necessary, the Court will expressly discuss a subclaim in detail.

prosecution during plea negotiations <u>and to carry out those</u> <u>threats</u> if the defendants refuse to accept the prosecution's plea offers.") (emphasis added). Likewise, Petitioner fails to demonstrate resulting prejudice as his filings do not suggest any reasonable possibility of success on a "vindictiveness" challenge. Petitioner's claims, including the unproven allegations that the Government knowingly relied on perjured testimony and allegations that Petitioner is actually innocent of the conspiracy charge, a charge <u>affirmed by the Fourth</u> <u>Circuit on direct appeal</u>, are denied.

In addition to the above, one of the subclaims in Petitioner's § 2255 motion asserts that counsel was ineffective for failing to request a jury instruction stating that acts of an informant acting as Government agent cannot be relied upon to establish a conspiracy. In an affidavit filed by Petitioner's trial counsel, counsel accurately notes that he made such legal point to the jury during his closing argument, but he acknowledges that, in hindsight, he should have requested a jury instruction establishing such legal point. Aff. ¶ 21, ECF No. 154; Trial Tr. 458, ECF No. 101. While the Court agrees that counsel "should have" requested such instruction, it nevertheless finds that Petitioner fails to demonstrate that counsel's failure to do so rose to the level of a constitutional deficiency in light of the evidence presented in this case.

First, particularly because the defense was relying on a "buyer-seller" defense to the alleged conspiracy,[14] the Government's most compelling evidence that a conspiracy existed involved a conspiracy between Petitioner and Kristin Post, Oliva's roommate who never acted as a Government agent. Second, while the Government did argue at trial that Oliva was herself a member of the conspiracy, such evidence did not rely on any agreement between Petitioner and Oliva on the day Petitioner was arrested, but instead focused only on a prior agreement and a prior drug transaction occurring a week before Oliva became a police "agent." Stated differently, the fact that Oliva agreed to act as an agent of the police on June 23, 2010, does not create a legal bar to the jury's consideration of Oliva's alleged participation in a criminal conspiracy approximately one week earlier.[15] For these reasons, defense counsel's failure to

---

[14] The Jury was properly instructed on the "buyer-seller" defense to the conspiracy charge. Trial Tr. ECF No. 101, at 418-19.

[15] The record in this case establishes that Oliva was acting as a police informant prior to the date of Petitioner's arrest; however, it also demonstrates that <u>unbeknownst to police</u>, Oliva was still buying and using meth during the time she was an informant. There is no evidence whatsoever suggesting that Oliva was acting as a police informant or agent during her contact with Petitioner approximately a week before he was arrested; to the contrary, she was disobeying police orders when secretly buying and using the meth she obtained from Petitioner. Trial Tr. 151. Accordingly, while the trial record suggests that the jury most likely relied on the interactions between Petitioner and Kristin Post to establish the necessary two participants in the criminal conspiracy to distribute narcotics, on this record, it does not appear that the law precluded the jury from relying on any of Oliva's alleged conspiratorial acts occurring prior to June 23, 2010. While the Fourth Circuit stated on direct appeal, without reservation, that Oliva cannot supply the necessary "agreement" to form a conspiracy because she acted as a "government

21

request the "police agent" jury instruction was not an error of constitutional dimensions.

Similarly, even if the Court found that counsel's failure to request such jury instruction amounted to constitutionally deficient performance, Petitioner fails to demonstrate resulting prejudice, which requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94. Here, as noted above, the trial evidence regarding the conspiracy focused on events preceding the date that Oliva became a government agent (as least with respect to her dealings with Petitioner), and the Court is confident that the jury would have reached the same verdict on Count One even if the legal point made by defense counsel during his closing argument was included in a jury instruction provided by the Court.[16]   Cf. Trial Tr. 447-48, ECF No. 101 (reflecting the Government's closing argument that "at a minimum a

_____

agent," such correct legal statement appears to be applicable only to the time period in which Oliva was acting as an "agent," i.e., on June 23, 2010. United States v. Guess, 482 F. App'x 832, 835 (4th Cir. 2012).

[16] Petitioner argues in his first reply memorandum that defense counsel was ineffective for failing to subpoena Post, a claim seeking to refute defense counsel's asserted belief that Post's testimony would not have helped Petitioner's defense.   ECF No. 159.   However, Petitioner's contention that "any reasonable attorney would have wanted the Government to produce a co-conspirator" completely overlooks the likelihood that the absence of Post at trial benefited the defense, either because: (1) her testimony may have served to corroborate Oliva's testimony; and/or (2) her absence may have raised doubts in the jury's mind as to whether a "conspiracy" actually existed.   Petitioner's conclusory assertions therefore fail to satisfy the highly demanding Strickland standard.

conspiracy existed between [Petitioner], Ms. Oliva and her roommate . . . Kristin Post" because "on occasions prior to June 23, 2010, . . . Mr. Guess distributed controlled substances to her and her roommate") (emphasis added); Sent. Tr. 5-6, ECF No. 102 (reflecting the Court's summary of the trial evidence as establishing, through Oliva's testimony, that a conspiracy existed between Petitioner and Post, as Post arranged and facilitated Oliva's prior meth purchase from Petitioner).[17] Petitioner's collateral challenge therefore fails to "undermine confidence in the outcome."[18] Strickland, 466 U.S. at 694.

---

[17] As noted by the Fourth Circuit on appeal, the Government also presented expert testimony from a police investigator in order to "put the relationship between Oliva, Post and [Petitioner] into context," as the local meth community was a "very close-knit organized group that ha[d] a very strong element of trust." Guess, 482 F. App'x at 834. Such testimony provided further corroboration for the Government's contention that Post conspired with Petitioner to distribute meth to Oliva.

[18] As discussed in footnote 10, Petitioner appears to improperly advance new/recast factual claims in his supplemental reply brief. Specifically, Petitioner now asserts that defense counsel not only failed to call Post as a witness during trial, but that he failed to make any pre-trial effort to interview her. First, such contention is arguably based on unsworn facts. Rhodes, 2013 WL 150335, at *3. Second, even if considered to be sworn statements, in light of the hundreds of earlier claims spanning hundreds of pages of briefing, exhibits, and affidavits, to include an earlier filed reply brief, Petitioner's supplemental assertions are presented too late in the process. Ibarra-Ayon, 2015 WL 5278379, at *1 n.1. Third, even assuming that Petitioner's new facts are sworn and are merely a "clarification" of his prior arguments, his updated claim is entirely conclusory as Petitioner does not advance an affidavit from Post, nor does he advance an affidavit from an investigator or anyone else (including himself) indicating that such person spoke with Post in order to determine what her trial testimony would have been. Rather, Petitioner merely advances his own proclamation as to how Post would have testified without providing any basis of knowledge behind such facially conclusory assertion. Accordingly, such facts are deemed speculative, and Petitioner therefore fails to satisfy Strickland's second prong. See Saunders v. United States, No. WDQ-08-0874, 2008 WL 4133853, at *3 (D. Md. Sept. 2, 2008) (rejecting a § 2255 IAOC claim that was based on counsel's alleged failure to interview potential witnesses because the petitioner merely

### E. Ground Five - IAOC - Failure to Advance
### An Entrapment Defense

Petitioner's fifth claim asserts that defense counsel was ineffective for failing to raise an entrapment defense, among other related and unrelated errors. Petitioner, however, fails to demonstrate that defense counsel performed deficiently, or that prejudice resulted, based on counsel's decision not to pursue an entrapment defense and/or entrapment jury instruction.

On these facts, defense counsel's decision not to pursue an entrapment defense is a strategic decision entitled to substantial deference. See United States v. Dehlinger, 740 F.3d 315, 325 (4th Cir. 2013) ("The Sixth Amendment does not provide a basis for disappointed clients to launch after-the-fact attacks on the objectively reasonable strategic decisions of their trial attorneys."). Notably, advancing an entrapment defense would not only have thrown open the door to the Government focusing its case on evidence regarding Petitioner's "predisposition" to engage in criminal conduct, but the quantity (and variety) of drugs found in Petitioner's truck, which far exceeded the 3 grams of meth found on his person, itself goes a long way (if not all the way) toward negating any chance for a successful entrapment defense. Cf. Mathews v. United States,

---

speculated that such individuals would provide favorable testimony); see also Jones v. Polk, 401 F.3d 257, 269-70 (4th Cir. 2005) (holding that conclusory and speculative allegations are not sufficient to support the right to an evidentiary hearing).

485 U.S. 58, 63 (1988) ("[A] valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct.") (citations omitted). Petitioner's ineffective assistance claim is therefore denied.

### F. Ground Six - IAOC - Failure to Plead Multiplicitous Indictment and Conviction

Petitioner's sixth claim asserts that counsel provided deficient representation by failing to challenge the multiplicitous indictment prior to trial and failing to challenge the multiplicitous convictions after trial. While defense counsel did not advance a pre-trial challenge to the superseding indictment, at sentencing, he successfully secured dismissal of one of the two § 922(g) felon in possession counts.[19] Moreover, defense counsel attempted, unsuccessfully, to convince the Court to impose concurrent, rather than consecutive, sentences on the two § 924(c) counts because the crimes occurred close in time at essentially the same location. On appeal, the Fourth Circuit squarely addressed a similar challenge to the § 924(c) counts, and consistent with this Court's ruling at sentencing, held that because "the drugs found on Guess's person related to the prearranged sale to Oliva,

---

[19] Although the Government made a "waiver" argument regarding defense counsel's failure to challenge the indictment prior to trial, the Court acknowledged the potential difficulty in identifying the issue in advance of trial, and ultimately concluded that, notwithstanding the timing of defense counsel's motion, the proper ruling was to dismiss one of the § 922(g) counts of conviction.

while the drugs found in Guess's truck related to a future distribution," there were separate predicate drug offenses associated with each of the two firearms seized, and thus, pursuant to controlling law, the § 924(c) counts were not "multiplicitous" and required consecutive sentences. United States v. Guess, 482 F. App'x 832, 836 (4th Cir. 2012) (citing United States v. Khan, 461 F.3d 477, 493 (4th Cir. 2006)).

In light of defense counsel's efforts on this issue, Petitioner's § 2255 collateral challenge fails to demonstrate constitutionally deficient performance. While defense counsel concedes in his § 2255 affidavit that he "should have" filed a pre-trial challenge to the indictment asserting that both the § 922(g) and the § 924(c) counts were multiplicitous, a lawyer's honest hindsight acknowledgement that more thorough representation could have been provided is not tantamount to an admission that the provided representation was constitutionally deficient. See Rowsey, 71 F. Supp. 3d at 597 ("'[E]ffective representation is not synonymous with errorless representation.'" (quoting Springer, 586 F.2d at 332)). Moreover, even if it is assumed that counsel performed deficiently by failing to file a pretrial motion, Petitioner fails to demonstrate resulting prejudice as: (1) one of the § 922(g) counts was dismissed prior to sentencing; and (2) a challenge to the § 924(c) counts, no matter the timing, would

have failed. <u>Khan</u>, 461 F.3d at 493. Petitioner's further assertion that allowing the jury to consider the second § 922(g) count negatively impacted "the fairness and integrity of the judicial proceedings" is rejected as Petitioner makes no credible showing of prejudice, particularly because the same evidence would have been presented even if one of the § 922(g) counts was dismissed prior to trial.[20] The Court similarly rejects Petitioner's assertion that counsel was ineffective for failing to challenge the substantive drug counts as being multiplicitous to the drug conspiracy count. See <u>United States v. Love</u>, 767 F.2d 1052, 1062 (4th Cir. 1985) (discussing Supreme Court precedent holding that "conspiracies and the substantive offenses committed in the course of those conspiracies are separate offenses and may be charged separately") (citations omitted).[21] Ground Six is therefore denied.[22]

---

[20] Notably, the jury still would have been presented with <u>six</u> different drug counts and <u>three</u> different firearms counts, and: (1) the same evidence associated with the second gun, found in Petitioner's truck, would still have been admitted in support of the § 924(c) count; and (2) the same evidence regarding Petitioner's prior felony convictions would have been admissible in light of the remaining charges.

[21] To the extent Petitioner asserts IAOC because Count Two (meth found on his person) is multiplicitous to Count Three (a distribution quantity of meth found in his truck), such claim fails on collateral review because not only was there "physical distance between the [separate drug] seizures and . . . different evidence required to prove each possession, but . . . the drugs found on Guess's person related to the prearranged sale to Oliva, while the drugs found in Guess's truck related to a future distribution." <u>Guess</u>, 482 F. App'x at 836.

[22] As discussed in footnote 10, Petitioner's supplemental reply brief appears to recast his claims based on newly advanced, and arguably unsworn, facts. In such filing, Petitioner highlights that defense

## G. Ground Seven - IAOC - Failure to Challenge
## Prosecutorial Misconduct

Petitioner's seventh claim asserts that his lawyer was constitutionally deficient for failing to challenge the prosecutor's opening and closing statements as improperly claiming that Petitioner drove the white truck to Oliva's apartment on the day he was arrested. Petitioner's argument fails on its face because, as discussed herein, there was sufficient circumstantial evidence to support such theory of the case based on Oliva's identification of Petitioner's truck and the trial testimony regarding Petitioner's arrival at Oliva's apartment after her phone call. Defense counsel was therefore not deficient, let alone constitutionally deficient, for failing to challenge the prosecutor's remarks. Moreover, even if deficient, Petitioner fails to demonstrate that such performance

---

counsel admitted at sentencing that he never interviewed Oliva prior to trial, further claiming that such an interview would have allowed counsel to file more effective pretrial motions. Even assuming such late-advanced facts are appropriate, Petitioner fails to demonstrate deficient performance or resulting prejudice. First, Petitioner fails to allege facts demonstrating that counsel did not attempt to contact Oliva, and the fact that defense counsel admitted his "lack of opportunity" to speak with a Government witness prior to trial is not the same as counsel admitting that he made no effort to do so. See United States v. Coles, No. 1:11cr512, 2013 WL 1947259, at *4 (E.D. Va. May 9, 2013) (dismissing the petitioner's ineffective assistance claim based on the alleged failure to interview government witnesses, in part because the Petitioner did "not establish how those interviews would have produced a different result at trial," further noting that "at least one government witness refused to talk to defense counsel"); Foster v. United States, No. 1:13cv168, 2014 WL 793139, at *4 (W.D.N.C. Feb. 26, 2014) (concluding that "providing effective assistance at trial does not require counsel to interview the prosecution's witnesses before trial"). Second, even assuming that no effort was made, Petitioner fails to demonstrate that such an interview would have resulted in a different outcome.

undermines confidence in the outcome of the trial (whether considered in isolation or in conjunction with the other alleged errors).[23] Petitioner's claim, and all subparts including those alleging improper constructive amendments to the indictment, are denied.[24]

## H. Ground Eight – IAOC – Failure to Object to Consecutive Sentences

Petitioner asserts that defense counsel improperly failed to challenge this Court's error in imposing a consecutive sentence on Count Eight, which was the second § 924(c) count. Petitioner asserts that because he was charged in Count Eight of the superseding indictment with a violation of § 924(c)(1) (A), it was improper for the Court to impose a twenty-five year

---

[23] To the extent Petitioner's reply brief asserts prosecutorial misconduct and/or IAOC based on the Government's statement, during closing, that the drug conspiracy charged in Count One involved drugs other than methamphetamine: (1) such stand-alone claim of prosecutorial misconduct is procedurally defaulted; (2) defense counsel immediately corrected the prosecutor at the start of his closing argument, Trial Tr. 457-58, ECF No. 101, and thus did not perform deficiently; and (3) Petitioner fails to establish prejudice, particularly in light of the fact that the verdict form (and superseding indictment) clearly stated that the only drug charged in the conspiracy was "a mixture and substance containing a detectable amount of methamphetamine." ECF No. 64.

[24] To the extent Petitioner argues that counsel was ineffective because Jury Instruction 37 improperly discusses the potential interplay between the methamphetamine conspiracy charged in Count One and substantive controlled substance offenses not involving meth (Counts 4-6), such claim fails. First, while such cross-reference appears mistaken, failure to object to it does not rise to the level of a constitutional deficiency. Second, even assuming that Petitioner's counsel was constitutionally deficient, Petitioner fails to demonstrate resulting prejudice because the trial evidence only supported a direct theory of liability against Petitioner as to Counts 4-6 (as contrasted with a theory of liability based on the acts of co-conspirators). Accordingly, Petitioner fails to demonstrate a reasonable likelihood of a different outcome had Instruction 37 only cross-referenced Counts 2-3 (the substantive meth counts) rather than cross-referencing Counts 2-6 (all of the substantive drug counts).

consecutive sentence as required by § 924(c)(1)(C) and (D).
Petitioner further argues that he was sentenced in excess of the
statutory maximum punishment on Count Eight. Petitioner's claim
regarding what is required to be charged in the indictment
misinterprets the law, and fails to establish any error, let
alone constitutional error, that would satisfy the first prong
of Strickland. See Almendarez-Torres v. United States, 523 U.S.
224, 226-27 (1998) (explaining that matters deemed to be
sentencing factors, as contrasted with elements of the offense,
do not need to be charged in an indictment); United States v.
Robinson, 404 F.3d 850, 862 (4th Cir. 2005) (reversing the
district court and remanding for resentencing because "the
statute mandates that each sentence for convictions under
§ 924(c) must be imposed consecutively"). Similarly,
Petitioner's argument regarding the statutory maximum is
misplaced, as it is in direct conflict with the fact that the
statutory maximum under § 924(c)(1)(A) is "life." Petitioner
likewise fails to demonstrate resulting prejudice as to either
argument. Cf. United States v. Cheek, 415 F.3d 349, 352 (4th
Cir. 2005) ("[T]he Supreme Court continues to hold that the
Sixth Amendment (as well as due process) does not demand that
the mere fact of a prior conviction used as a basis for a
sentencing enhancement be pleaded in an indictment and submitted

to a jury for proof beyond a reasonable doubt.").[25] Accordingly, Ground Eight of Petitioner's § 2255 motion, including all subparts, is denied.

### I. Ground Nine - Prosecutorial Misconduct - Failure to Present Exculpatory Evidence at Trial & IAOC

Petitioner asserts that the prosecution committed constitutional error by failing to introduce impeachment evidence at his jury trial, consisting of recorded jail calls in which Petitioner states to his wife that, while in custody, he met a fellow inmate named "Charles Joyner" for the first time. Petitioner asserts that this evidence is exculpatory because, according to Mr. Joyner's testimony at Petitioner's trial, Joyner previously purchased drugs from Petitioner. First, such claim is dismissed as procedurally defaulted as it was not raised on direct appeal, and Petitioner fails to satisfy the two-part test necessary to overcome his default. Frady, 456 U.S. at 167. Second, even if this claim were properly before the Court, or if it is construed as a stand-alone ineffective assistance claim based on counsel's failure to challenge the prosecutor's actions, or if ineffective assistance were asserted as a means to overcome the procedural default, such claim would

---

[25] Even if the law generally required an indictment to reference a prior § 924(c) conviction when one existed, here, Petitioner's superseding indictment expressly charged two separate § 924(c) offenses. Accordingly, read in conjunction with well-established case law, the superseding indictment placed Petitioner on notice that, if he was convicted of both counts Seven and Eight, Count Eight would be deemed a "second or subsequent conviction." See Deal v. United States, 508 U.S. 129 (1993); United States v. Raynor, 939 F.2d 191, 194 (4th Cir. 1991).

still be denied as the Government has no legal obligation to
introduce exculpatory material at trial, but rather, it is only
required to turn it over to the defense.   See United States v.
Parker, 790 F.3d 550, 558 (4th Cir. 2015) (discussing the
elements that must be proven to establish a Brady violation,
which include "that the prosecution knew about the [exculpatory
or impeachment] evidence and failed to disclose it") (citations
omitted).

      As to the portion of this claim that can be construed as
alleging that defense counsel was ineffective for not
introducing such exculpatory statements, the nature of the
disputed evidence itself demonstrates that counsel's decision
not to introduce the calls was a reasonable strategic decision
not subject to hindsight attack.   Notably, such calls do not
arise from an independent source, but instead only include
statements made by Petitioner and his wife.   Accordingly, the
calls had the potential to hurt Petitioner's case as the
Government would likely have characterized them as self-serving
denials of prior illegal drug transactions made during a phone
call that Petitioner knew was being recorded by authorities.
Moreover, even assuming that defense counsel was deficient for
not introducing such material, Petitioner fails to demonstrate
that playing such recorded phone calls would create a
"reasonable probability that . . . the result of the proceeding

would have been different." Strickland, 466 U.S. at 693-94.[26]
Petitioner's claim is therefore dismissed and denied.

## J. Ground Ten- IAOC - Improper Stipulations

Petitioner next asserts that his counsel took advantage of
him and improperly compelled him to agree to stipulations that
directly conflicted with the defense provided at trial.
Petitioner's argument, however, relies on a mischaracterization
of the record as it distorts the admissions made by the defense.
Contrary to Petitioner's § 2255 claims, the trial stipulations
did not admit to Petitioner's control over the gun or the drugs
found in his truck, nor did they admit his knowledge that the
truck contained drugs or a gun. Rather, the stipulations merely
acknowledged that the Government could prove that the seized
narcotics were in fact narcotics, and that the seized guns were

---

[26] As discussed in footnote 10, Petitioner's lengthy supplemental reply
brief appears to recast his claims based on newly advanced, and arguably
unsworn, facts. In such filing, Petitioner contends not that defense
counsel improperly failed to introduce recorded jail calls at trial, but
that he failed to even review such evidence prior to trial. First, such
revised factual assertion, which may not be properly sworn, was submitted
at such a late stage in the § 2255 proceeding that it is not properly
before the Court. Second, even assuming both that such factual assertion
is timely and that it is sworn evidence, it does not support § 2255
relief, nor warrant an evidentiary hearing, because even assuming its
truth, Petitioner fails to establish resulting prejudice. Notably,
according to Petitioner's own claims, at best such evidence would undercut
one jail-house witness's testimony, and at worst, it would have bolstered
the Government's case as the jury could have viewed such calls as a ruse.
Even assuming the most favorable interpretation of the recordings, in
light of: (1) the physical evidence seized from Petitioner and from his
truck (which he held the keys to); (2) Oliva's testimony regarding the
conspiracy between Petitioner and Post; and (3) police testimony regarding
Oliva arranging a three gram meth purchase and Petitioner arriving at
Oliva's apartment shortly thereafter with approximately three grams of
meth in his pocket, the discrediting of a single jailhouse witness would
not undermine confidence in the outcome. Strickland, 466 U.S. at 693-94.

in fact manufactured outside of Virginia.   See, e.g., ECF No.
165-3.   Even now, several years after his trial, Petitioner
advances no valid challenge to the accuracy of either stipulated
fact  nor  a  suggested  course  of  action  that  could  have
effectively called such facts into dispute had the Government
been put to their burden at trial.   Accordingly, Petitioner
fails to demonstrate that counsel provided constitutionally
deficient performance by advising him to enter into the
stipulations.   Moreover, even if it is assumed that defense
counsel performed deficiently, Petitioner fails to demonstrate
resulting prejudice.   Petitioner's claim is therefore denied.

### K. Ground Eleven – Sentencing Guidelines Error

Petitioner  asserts  that  the  Court  imposed  an
unconstitutional sentence by applying a two-level "obstruction
of justice" sentencing enhancement under the advisory sentencing
Guidelines based on facts found by the Court by a preponderance
of the evidence.   First, such claim is dismissed as procedurally
defaulted as it was not raised on direct appeal, and Petitioner
fails to satisfy the two-part test necessary to overcome his
default.   Frady, 456 U.S. at 167.   Second, even if this claim
were properly before the Court, or if it is construed as an
ineffective assistance claim, or if ineffective assistance was
asserted as a means to overcome the procedural default, such
claim would be denied as no constitutional error occurred.

Contrary to Petitioner's arguments, the Supreme Court's decision in Alleyne v. United States, 133 S. Ct. 2151 (2013) is limited to barring judges from finding facts at sentencing that increase a mandatory minimum sentence, and thus, "Alleyne had no effect on Guidelines enhancements" that operate within the statutory range established by the jury's findings. United States v. Holder, 549 F. App'x 214, 215 (4th Cir. 2014). Stated differently, "the factual findings needed to calculate a defendant's advisory Guidelines range are still within the district court's province." Holder, 549 F. App'x at 215 (citations omitted). Petitioner's claim is therefore dismissed and denied.

### L. Ground Twelve – IAOC – Failure to Challenge Ex Post Facto Sentencing Error

Petitioner's twelfth claim asserts that defense counsel improperly failed to challenge the Court's imposition of a term of "Supervised Release" at sentencing without first obtaining the jury's assessment of Supervised Release. Petitioner's claim fails on its face as counsel plainly had no colorable claim to advance on this issue. The Court, not the jury, imposes Supervised Release at sentencing, and Petitioner's argument contending that Supervised Release constitutes an element of the offense to be found by the jury finds no support in the law. Moreover, it is notable that the six (6) year term of supervised release imposed by the Court in this case was the mandatory

minimum term <u>required by statute</u> under 21 U.S.C. § 841(b)(1)(C) as a result of Petitioner's prior felony drug offense. Accordingly, even if Petitioner demonstrated deficient performance, he fails to demonstrate resulting prejudice. For these reasons, Petitioner's claim is denied.

### M. Ground Thirteen – IAOC – Failure to Challenge 404(b) Evidence

Petitioner next asserts that defense counsel improperly failed to challenge the Government's introduction of Rule 404(b) prior "bad acts" evidence. He further argues that counsel should have raised an objection under Rule 609 of the Federal Rules of Evidence. Petitioner's claims fail to satisfy either prong of <u>Strickland</u>. First, defense counsel filed two separate briefs prior to Petitioner's jury trial objecting to the introduction of 404(b) evidence, to include information about Petitioner's prior convictions. ECF Nos. 35, 56. Counsel further argued for exclusion of these matters during Petitioner's trial. Second, Rule 609, invoked by Petitioner on collateral review, applies to testifying witnesses and the use of a prior conviction as impeachment—a matter not applicable because Petitioner did not testify. Third, even if counsel should have provided a more robust defense on this issue, Petitioner fails to demonstrate a reasonable probability that additional objections, argument, or evidence would have: (1) secured the exclusion of evidence associated with Petitioner's

prior felonies and/or drug activities; and (2) that if such evidence were excluded, in light of all the other trial evidence, such exclusion would undermine confidence in the outcome.  Petitioner's claim is therefore denied.

### N.  Ground Fourteen – IAOC – Failure to Challenge Unlawful Search and Seizure of Vehicle

This claim was fully addressed above in subpart "A" in conjunction with Petitioner's claim that counsel was ineffective for failing to challenge the search of his person.  Ground Fourteen is denied for failure to satisfy either prong of the Strickland standard.

To the extent Petitioner separately asserts in a subclaim to Ground Fourteen that appellate counsel was ineffective for failing to challenge the vehicle search on appeal, such claim fails because Petitioner does not demonstrate that the "ignored issues are clearly stronger than those presented." Lawrence v. Branker, 517 F.3d 700, 709 (4th Cir. 2008) (quotation marks and citation omitted).  Proceeding on the same topic, Petitioner's briefs are replete with subclaims asserting that appellate counsel was ineffective for failing to raise countless arguments on appeal that Petitioner now advances in his § 2255 motion. Because none of these numerous subclaims demonstrate how an unraised appellate issue is "clearly stronger than those presented" on appeal, all of such claims fail to demonstrate constitutionally deficient performance.  Id.; see Smith v.

Murray, 477 U.S. 527, 536 (1986) ("Th[e] process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.") (internal quotation marks and citation omitted). Even in hindsight, it is this Court's view that appellate counsel wisely focused appeal efforts on the claimed multiplicity of the two § 924(c) convictions because Petitioner's alleged predicate crimes occurred close in time and close in proximity. Moreover, if such a claim had been successful, it would likely have resulted in the reduction of Petitioner's sentence from 460 months to 160 months. Alternatively, even assuming that appellate counsel was deficient for failing to raise one or more of the countless § 2255 claims Petitioner asserts were overlooked, such as the jury instructions failing to include an instruction about "Government Agents," Petitioner fails to demonstrate resulting prejudice. Petitioner's claim is therefore denied.

### O. Grounds Fifteen, Sixteen, Twenty & Twenty-Three – IAOC – Failure to Challenge Jurisdiction/Usurpation of State Sovereignty

Petitioner asserts across various claims that counsel improperly failed to challenge federal subject matter jurisdiction and/or the propriety of his federal prosecution. Petitioner relies in part on the fact that he was arrested by state authorities, not federal agents, and that he was not

arrested on federal land. Petitioner further contends that he was charged with crimes that were not punishable under the laws of Virginia at the time he was arrested.

Petitioner's various arguments associated with the interplay of the state and federal criminal codes, matters administered by two separate sovereigns, fail to articulate a valid legal claim that should have been advanced by defense counsel, and thus fail to satisfy either prong of the Strickland test. Federal authorities had jurisdiction to prosecute Petitioner under federal law, and the fact that they chose to do so did not conflict with, or otherwise improperly "usurp," state power as alleged by Petitioner. Rather, Virginia authorities retained the legal right to prosecute Petitioner for his actions under the criminal code of Virginia. See Heath v. Alabama, 474 U.S. 82, 88-89 (1985) (explaining that "[w]hen a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offences,'" and that because "the States are separate sovereigns with respect to the Federal Government," a state and the federal government can successively prosecute the same person, for the same acts, without violating the Double Jeopardy clause of the Fifth Amendment). Petitioner similarly fails to carry his burden as to either prong of Strickland with respect to his challenges associated with the fact that federal

39

authorities relied on a prior state conviction as the predicate
felony offense for his § 922(g) felon in possession charges.
Grounds Fifteen, Sixteen, Twenty, and Twenty-Three are therefore
denied.[27]

### P.  Grounds Seventeen & Eighteen – IAOC – Failure to Challenge Constructive Amendments to Indictment

Petitioner next asserts that counsel improperly failed to
challenge the prosecution and/or the Court's constructive
amendment of the indictment through improper jury instructions
and/or improper sentencing.  Both such arguments fail as
Petitioner does not demonstrate that counsel performed
deficiently, let alone demonstrate that the asserted deficiency
rose to the level of constitutional proportions.  Notably,
Petitioner fails to demonstrate that the jury instructions were
improper statements of the elements of 18 U.S.C. § 924(c), or
that they constructively amended the superseding indictment

---

[27] The Government argues in its brief in opposition that this Court should
not consider these jurisdictional challenges because Petitioner advanced
the same arguments before the Fourth Circuit in conjunction with his
direct appeal.  See, e.g., ECF No. 120, 121.  However, it appears that
Petitioner's prior jurisdictional claims appealed to the Fourth Circuit,
which were actually raised in appeals filed subsequent to the Fourth
Circuit's ruling on Petitioner's initial direct appeal, focused primarily
on claimed speedy trial violations.  To the extent Petitioner's § 2255
filings again advance a jurisdictional argument premised on an alleged
speedy trial violation, such claim is dismissed because "issues fully
considered and rejected on direct appeal may not be relitigated by a
defendant through the use of a § 2255 motion."  United States v. Scales,
231 F. Supp. 2d 437, 445 (E.D. Va. 2002) (citing Boeckenhaupt v. United
States, 537 F.2d 1182, 1183 (4th Cir. 1976)).  To the extent Petitioner
previously raised a direct claim alleging a speedy trial violation, and
now seeks to advance an ineffective assistance claim on the same theory,
such claim is denied as Petitioner fails to establish constitutionally
deficient performance or resulting prejudice.

charging Petitioner with two § 924(c) violations.  See <u>United
States v. Bailey</u>, 329 F. App'x 439, 441 (4th Cir. 2009)
("Possession of a firearm in furtherance of a drug trafficking
crime under § 924(c) may be shown through either actual or
constructive possession.") (citation omitted).  Notably here,
the grand jury charged Petitioner with possessing the second
firearm "in a Ford F-150," and the Government's reliance at
trial on a "constructive possession" theory did not
impermissibly broaden the basis for conviction such that
Petitioner was convicted for a crime other than the crime
charged in the superseding indictment.  See <u>United States v.
Allmendinger</u>, 706 F.3d 330, 339 (4th Cir. 2013) ("When a court
is considering a constructive amendment claim . . . [t]he key
inquiry is whether the defendant has been tried on charges other
than those made in the indictment against him") (internal
quotation marks and citation omitted); <u>United States v. Stewart</u>,
No. 1:06cr46, 2011 WL 4595243, at *7 (W.D. Va. Oct. 3, 2011)
(finding that the indictment adequately notified the defendant
that "the government would attempt to prove possession [of a
firearm] . . . by whatever means, and the fact that the
prosecution's case at trial included evidence of constructive
possession did not change the nature of the charge itself"); <u>see
also Muscarello v. United States</u>, 524 U.S. 125, 139 (1998)
(indicating that, for purposes of interpreting the clause of

§ 924(c) that criminalizes carrying a firearm in furtherance of a drug trafficking crime, "the word 'carry' includes the carrying of a firearm in a vehicle").

Petitioner likewise fails to demonstrate that a violation of _Alleyne_, or any other legal error, occurred when the Court sentenced Petitioner to twenty-five years, consecutive, on the second § 924(c) count, as such sentence was both mandated by statute and affirmed on direct appeal by the Fourth Circuit.[28] _See Alleyne_, 133 S. Ct. at 2160 n.1 (noting that the holding of _Alleyne_ does "not revisit" _Almendarez-Torres_, 523 U.S. at 226, which held that an increased statutory punishment based on a prior conviction is not an element of the offense, but is instead merely a penalty provision); _Robinson_, 404 F.3d at 862 (consecutive sentences required by statute).

As with Petitioner's other IAOC claims, even if the Court assumes that counsel performed at a constitutionally deficient level with respect to one or more of the above matters, Petitioner fails to demonstrate resulting prejudice.[29] Petitioner's claims and subclaims are therefore denied.

---

[28] Subpart "H" above further addresses Petitioner's challenge to the consecutive sentence on the second § 924(c) conviction.

[29] The Court notes that, as to both Counts Seven and Eight of the Superseding Indictment, Petitioner was convicted, by unanimous jury verdict, of "using or carrying" a firearm in furtherance of listed drug trafficking crimes and he was _separately_ convicted, by unanimous jury verdict, of possessing a firearm in furtherance of listed drug trafficking crimes. Either of such findings is alone sufficient to support a

### Q. Ground Nineteen - IAOC - Failure to Challenge Lack of Perpetual Subject Matter Jurisdiction

Petitioner asserts in Ground Nineteen that defense counsel improperly failed to challenge Congress' lack of authority to criminalize possession of a firearm by a convicted felon (even though Petitioner's firearms were found to have been shipped or transported in interstate or foreign commerce). Petitioner, however, fails to articulate a valid legal challenge to this Court's jurisdiction, and thus, fails to demonstrate either constitutionally deficient performance or resulting prejudice. See United States v. Wells, 98 F.3d 808, 811 (4th Cir. 1996) (rejecting the defendant's jurisdictional challenge to § 922(g), explaining that the § 922(g) requirement that the Government prove "that a nexus exists between the firearm and interstate commerce . . . satisfies the minimal nexus required for the Commerce Clause" (citing Scarborough v. United States, 431 U.S. 563, 575 (1977))). Petitioner's claim is therefore denied.

### R. Ground Twenty - IAOC - Failure to Challenge Jurisdiction/Usurpation of State Sovereignty

This claim was addressed above in subpart "O" and is denied for the reasons previously stated.

### S. Ground Twenty-One - IAOC - Failure to Challenge Jurisdiction - Validity of Federal Criminal Code

Petitioner next asserts that defense counsel performed

---

conviction, and thus, if one finding was proven infirm, it would not change the outcome.

deficiently by failing to challenge this Court's jurisdiction based on the fact that 18 U.S.C. § 3231, the statute that establishes the original jurisdiction of United States District Courts, was not properly authorized by Congress. Petitioner fails to carry his burden under either prong of the Strickland test, with this Court agreeing with the analysis set forth in numerous prior cases that have addressed and rejected such argument. See Turner v. United States, No. 09-180-WS-C, 2011 WL 5595939, at *5 (S.D. Ala. Sept. 8, 2011) (collecting cases, and summarizing as follows: "every court to have addressed the question presented here—that is, the claim that Public Law 80-772, which is the provision that enacted 18 U.S.C. § 3231 establishing jurisdiction of the federal courts, is invalid because it was never voted into law by both Houses of Congress—has found same to be without merit on one of the three following bases: (1) the 1948 amendment to 18 U.S.C. § 3231 was properly enacted; (2) even if the 1948 amendment to § 3231 is defective, the predecessor statute to § 3231 provides for jurisdiction; and (3) the 'enrolled-bill rule' forbids challenge to the validity of 18 U.S.C. § 3231") (citations omitted); United States v. Hornback, No. 3:10-13-DCR, 2014 WL 2768872, at *16 (E.D. Ky. June 18, 2014) (same); see also Moody v. Polk, 408 F.3d 141, 151 (4th Cir. 2005) (finding that counsel was not constitutionally deficient for failing to file a motion that was not likely to

succeed).  Petitioner's claim is therefore denied.

### T.  Ground Twenty-Two – IAOC – Failure to Challenge Constructive Amendment to 21 U.S.C. § 841/851

Petitioner asserts that his lawyer was ineffective for failing to challenge the inconsistencies in the superseding indictment, and jury verdict form, regarding the drug quantity and the cited statute.  Specifically, Petitioner asserts that because he was charged with conspiring to distribute "50 grams or more" of methamphetamine, the superseding indictment should have referenced 21 U.S.C. § 841(b)(1)**(A)** rather than 21 U.S.C. § 841(b)(1)**(B)**.  However, Petitioner appears to confuse the difference between being charged with trafficking "methamphetamine" and being charged with trafficking "a mixture or substance containing a detectable amount of methamphetamine." Because Petitioner was charged with the latter, the superseding indictment correctly references a violation of § 841(b)(1)(B) based on allegations that Petitioner trafficked in more than 50 grams.  Moreover, because the jury found that Petitioner conspired to traffic in less than 50 grams, Petitioner was actually convicted and sentenced for violating the lesser included offense set forth in 21 U.S.C. § 841(b)(1)(C) (which applies to any minor quantity of meth, or any minor quantity of a mixture or substance containing a detectable amount of meth). Accordingly, Petitioner's collateral challenge fails to demonstrate that his lawyer acted deficiently for failing to

challenge a proper indictment and proper verdict form. Moreover, as Petitioner was found guilty of a lesser offense associated with trafficking in any quantity of a mixture or substance containing a detectable amount of methamphetamine, he fails to demonstrate prejudice.[30]

---

[30] Petitioner asserts within Ground Twenty-Two that his counsel was ineffective for failing to explain to him that his sentence on Count One could be enhanced under 18 U.S.C. § 851 due to his prior drug felony conviction if he was found to have conspired to traffic in any quantity of meth (as opposed to at least 50 grams of meth). Petitioner further claims that if he had known such fact, he "may" have pled "'no contest' to the alleged conspiracy with himself." First, such claim is denied based on the equivocal assertion advanced by Petitioner, which is afforded no weight by the Court. Second, the Court finds that even if counsel failed to discuss this matter with Petitioner, such failure was not of constitutional dimensions in light of the other similarly enhanced charges pending in this case. Third, even if counsel's performance is presumed deficient, Petitioner fails to demonstrate prejudice as there is no credible showing that the outcome of this case would have been different. Specifically, the record establishes that Petitioner's assertion that this issue "may" have impacted his plea is incredible on its face because the impact of the § 851 information on the lesser included § 841(b)(1)(C) conspiracy charged in Count One was to increase the maximum sentence for Count One from 20 to 30 years, and to increase the mandatory period of supervised release from 3 years to 6 years. Such increases carried exactly the same risk as the statutory § 851 increases already applicable to Counts 2, 3, 4, and 6, and Petitioner proceeded to trial on these counts notwithstanding the overwhelming evidence against him, particularly with respect to Count 2. Cf. Gaskins v. McKellar, 916 F.2d 941, 946 (4th Cir. 1990) ("Where the allegations in a habeas petition are palpably incredible, the petition properly may be dismissed without affording any evidentiary hearing.") (citation omitted); Ellis v. Picklesimer, 135 F. Supp. 2d 717, 720 (M.D.N.C. 2000) (explaining that an evidentiary hearing is unnecessary "when a petitioner has made a claim which is incredible on its face or incredible in the context of the record before the Court"). Moreover, Petitioner's equivocal claim appears in conflict with his repeated assertions throughout his § 2255 filings that he never conspired with anyone to commit a drug trafficking crime. Of further note, entering a plea on Count One would have had no practical benefit in light of the Government's overwhelming evidence of guilt as to Count 2, the lack of a benefit further illustrated by the identical concurrent sentences imposed on Counts 1, 2, 3, 4, and 6. ECF No. 87. Accordingly, Petitioner's claim that he "may" have pled guilty to the "conspiracy with himself" if he fully understood the § 851 implications with regard to the lessor included offense of Count One is denied.

Petitioner also fails to demonstrate that his lawyer was ineffective for failing to challenge the Government's reliance on a prior state court drug conviction to enhance his federal punishment in this case. See 21 U.S.C. § 851; 21 U.S.C. § 841(b)(1)(C). Notably, Petitioner appears to misinterpret the legal definition of a "felony drug offense" as defined by 21 U.S.C. § 802(44), which expressly includes state crimes restricting conduct related to narcotics for which the punishment is "more than one year." Id. Petitioner similarly fails to demonstrate resulting prejudice associated with his § 851 claim or any of the widely varying subclaims included within Ground Twenty-Two. Cf. Dyess, 730 F.3d at 359 (indicating that "vague and conclusory claims" are subject to summary denial). Petitioner's claim is therefore denied.

### U. Ground Twenty-Three - IAOC - Failure to Challenge Jurisdiction/Usurpation of State Sovereignty

This claim was addressed above in subpart "O" and is denied for the reasons previously stated.

### V. Ground Twenty-Four - IAOC - Failure to Challenge Ex Post Facto Judgment Order

Petitioner next asserts that his counsel was ineffective for failing to challenge the reference in the Court's judgment order to 18 U.S.C. § 2, a statute Petitioner asserts was not before the jury. See Judgement at 1, ECF No. 87. Section 2 of Title 18, titled "Principals," indicates that a person is

47

similarly guilty of an offense against the United States regardless as to whether such individual personally commits the offense, or whether he aids, abets, commands, induces or procures its commission. Petitioner fails to demonstrate that the reference to § 2 in his Judgment order is in error because: (1) the superseding indictment expressly references 18 U.S.C. § 2; (2) contrary to Petitioner's suggestion, the jury instructions used in this case included an instruction explaining that the jury could find Petitioner criminally responsible as an "aider and abettor," Trial Tr. 434-35, ECF No. 101, and (3) "Aiding and abetting is not an independent crime under 18 U.S.C. § 2," but instead codifies an alternative theory of liability applicable to all federal statutes. United States v. Rashwan, 328 F.3d 160, 165 (4th Cir. 2003) (internal quotation marks and citation omitted); see United States v. Duke, 409 F.2d 669, 671 (4th Cir. 1969) (explaining that it is well-established that a defendant may be convicted of "aiding and abetting" even if only charged as a principal, but that when an alternative aiding and abetting theory of liability is anticipated by the Government prior to trial, "[d]oubtless the better practice" is to include in the indictment "at least . . . a reference to 18 U.S.C. § 2"). In light of the above, Petitioner fails to demonstrate ineffective assistance of counsel based on his trial or appellate counsel's failure to

challenge the reference to § 2 in his Judgment order. Additionally, he fails to demonstrate resulting prejudice. Petitioner's claim is therefore denied.

## W. Ground Twenty-Five - IAOC - Failure to Challenge Lack of Jurisdiction Under Title 21

Petitioner's final claim asserts that his counsel was ineffective for failing to challenge the Government's lack of jurisdiction to charge him under Title 21 because it is an "Administrative law for 'registrants' of the Food and Drug, Administration." ECF No. 147-4, at 40. To the extent such claim conflates Title 21 of the United States Code with Title 21 of the Code of Federal Regulations, it is denied as it is predicated on a misinterpretation of the law. To the extent such claim is made on another basis, it is undeveloped and facially meritless. <u>Dyess</u>, 730 F.3d at 359. For these reasons, Petitioner fails to carry his burden to satisfy either prong of the <u>Strickland</u> test, and this claim is therefore denied.

## IV. CONCLUSION

As discussed above, Petitioner's § 2255 claims grounded in something other than ineffective assistance of counsel, including subclaims, are **DISMISSED** as procedurally defaulted. Alternatively, each of these claims and subclaims are **DENIED** on the merits. As to the remaining claims and subclaims asserting ineffective assistance of counsel, such claims are **DENIED** on the merits as Petitioner has failed to demonstrate

49

that counsel provided constitutionally deficient performance, and separately failed to demonstrate resulting prejudice that would undermine confidence in the outcome of Petitioner's trial, sentencing, or appeal. As to Petitioner's associated motion seeking additional discovery, ECF No. 161, as set forth herein in footnote 1, in light of the Government's production of the requested discovery materials, such motion is **DISMISSED AS MOOT**, and is alternatively **DENIED**.

The Court summarizes the lengthy analysis herein as follows: On June 23, 2010, Petitioner was arrested with a gun and methamphetamine on his person shortly after a police informant had called him to arrange the purchase of methamphetamine. Petitioner's truck, found at the location that the informant asked Petitioner to travel to, contained another firearm and distribution quantities of multiple drugs. Facing such evidence, and with Petitioner opting to exercise his constitutional right to a jury trial, defense counsel pursued the defense that appears from the record to have had the greatest possibility of success: that Petitioner never "conspired" with anyone to distribute drugs, and that the Government did not have sufficient evidence to tie Petitioner to the second firearm and the larger quantity of drugs found in his truck. Such defense, if successful, would have avoided a twenty-five year consecutive sentence on the second § 924(c)

firearm count and potentially greatly reduced Petitioner's drug-based sentencing Guideline range. Petitioner's trial and appellate counsel's defense in this case, which included multiple pretrial motions and filings, a successful effort at sentencing to have one count of conviction dismissed, as well as an effort at sentencing and on appeal to avoid a twenty-five year consecutive sentence on the second § 924(c) firearm count, exceeded the constitutional requirement for competence. See Mason, 774 F.3d at 828 (recognizing that each criminal case can be defended in "countless" different ways that still amount to constitutionally effective representation). Moreover, there is no evidence that any errors that counsel may have made undermine confidence in the outcome of trial, sentencing, or Petitioner's direct appeal, to include consideration of the aggregate effects of the alleged errors.

Finding that the procedural basis for the dismissal of the defaulted portions of Petitioner's § 2255 motion is not debatable on this record, and separately finding that Petitioner has not made a "substantial showing of the denial of a constitutional right," as to any claim or subclaim in his § 2255 motion, a certificate of appealability is **DENIED**. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); see R. Governing § 2255 Proceedings in U.S. Dist. Cts. 11(a).

Petitioner is **ADVISED** that, because this Court has **DENIED** a certificate of appealability with respect to his § 2255 motion, he may seek a certificate from the United States Court of Appeals for the Fourth Circuit. R. Gov. § 2255 Proceedings for U.S. Dist. Cts. 11(a). If Petitioner intends to seek a certificate of appealability from the Court of Appeals, he must forward a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia, 23510, within sixty (60) days from the date of this Opinion and Order.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to Petitioner, Petitioner's former counsel, and the United States Attorney's Office in Newport News, Virginia.

**IT IS SO ORDERED.**

_____ /s/ Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
March 25 , 2016